Rosalind SOWARD, Plaintiff/Appellant,

v.

**David J. MAHAN and The Board of Education of the City of St. Louis, Defendants/Respondents.**

No. 68473.

Missouri Court of Appeals, Eastern District, Division Three.

May 28, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 10, 1996.

Application to Transfer Denied Aug. 20, 1996.

---

Hugh R. Law and David Arthur, St. Louis, for appellant.

Daniel K. O'Toole, St. Louis, for respondents.

RHODES RUSSELL, Judge.

Rosalind Soward ("Teacher") appeals a decision of the Circuit Court of the City of St. Louis in favor of the Board of Education of the City of St. Louis ("Board") which dismissed her from employment as a permanent elementary school teacher for inefficiency. We affirm.

Teacher taught elementary school for 26 years prior to being terminated on November 23, 1993. During the last eight years Teacher worked at the Meramec School in the St. Louis School District teaching first and second grades. Her performance evaluations were generally satisfactory through the spring semester of 1991. In the fall of 1991, Beverly Wilkins ("Principal") became acting principal of the Meramec School. Wilkins documented several problems with Teacher's performance in the fall of 1991. Of most concern were Teacher's inability to discipline her students and the general untidiness of her classroom. Jeanette Pulliam, a curriculum specialist for reading, and Edward Ortleb, a curriculum specialist for science, also observed Teacher's classroom during the 1991 fall semester. Both documented concerns with her teaching style and discipline of the students.

On December 11, 1991, Principal completed a "Summative Evaluation Report" on Teacher. She was rated as "unsatisfactory" in 13 categories and as "needs improvement" in seven categories. She received only one "satisfactory" evaluation. Principal gave Teacher an overall "unsatisfactory" rating for the semester. An appointment to discuss the evaluation was scheduled for December 12, 1991, but Teacher went on sick leave that day and did not return to work until August of the following year. A summative evaluation form was submitted for Teacher for the spring semester of 1992, even though she did not teach that semester. While most of the form was left blank, the comment section contained the following:

> Ms. Soward has not returned to duty since her unsatisfactory evaluation on December 12, 1991. Upon her return from leave, it will be recommended that she begin her 100 days of probation.

Principal testified that the spring evaluation was mailed to Teacher, although Teacher denies ever receiving it.

Teacher returned to work on August 26, 1992, a few days prior to the beginning of fall semester classes. Upon observing her, Principal felt that she was not capable of returning to work. She testified that Teacher behaved erratically and was uncooperative. Teacher was placed on medical leave from August 28, 1992, to September 25, 1992. She returned to work on September 28, 1992, after a doctor certified that she was capable of returning. She was assigned to a second grade classroom at the Meramec School.

In a certified letter dated September 21, 1992, Superintendent David T. Mahan ("Superintendent") informed Teacher that she had one semester to improve her inefficiencies as a teacher. The letter noted several areas of concern, including preparation for instructions, implementation of varied teaching strategies, classroom organization, noise level and interpersonal relations. Teacher denies ever receiving the letter and suggested that it may have been delivered to a street named Wallington Walk, instead of to her at Wallington Court. On October 8, 1992, Principal sent Teacher a note requesting a meeting concerning her semester warning period. Teacher claims that this was the first she heard of the warning. The next day Principal did meet with her and showed her a copy of the warning letter. Principal testified that Teacher routinely denied receiving documents, and as a result she began requiring her to sign documents when she received them. When she refused to sign, Principal so noted.

Following the October 9, 1992 meeting, Principal and Winifred Deavens, a curriculum supervisor employed by the district, observed and evaluated Teacher's classroom performance. Following these observations, the evaluators generally met with Teacher to discuss the observations and suggest ways in which her teaching could be improved. At least five such conferences were held. The evaluators noted the same deficiencies in her teaching style that had been complained of in the warning letter.

On March 23, 1993, Superintendent sent a letter to Teacher notifying her that she had not demonstrated satisfactory progress during the warning period and that he was therefore recommending that the Board discharge her for inefficiency in the line of duty. Teacher was thereafter suspended without pay. The letter also informed her of her rights under § 168.221 RSMo 1994.[1]

A hearing before the Board was held on July 20, July 21 and August 9, 1995. Teacher was represented by counsel and exercised her right to introduce evidence and cross-examine witnesses. On November 23, 1995, the Board issued its decision finding that

Teacher was inefficient in the line of duty. As a result, the Board decided to discharge her from her position as a teacher. Teacher thereafter filed a petition with the Circuit Court of the City of St. Louis to review the decision of the Board. After a hearing, the circuit court entered a judgment in favor of the Board. This appeal now follows.

In the first point on appeal, Teacher claims that the provisions of § 168.221.3 were not followed in that she did not receive a full semester warning period in which to improve her teaching. Section 168.221.3 in relevant part reads:

> ... Inefficiency in line of duty is cause for dismissal only after teacher or principal has been notified in writing at least one semester prior to the presentment of charges against him by the Superintendent....

Teacher interprets this statute as requiring a calendar semester, rather than any specific number of days. Since Teacher claims she received the notification letter on October 9, 1992, or at the earliest September 21, and was suspended on the following March 23, she claims that she did not receive a calendar semester to improve herself. She contends that the notice period did not begin to run until the beginning of the spring semester as she did not receive the warning letter until the middle of the fall semester, therefore, she had until the end of the spring semester to improve her teaching. The Board argues that § 168.221.3 only requires a teacher be given a period of time equivalent to one semester to improve. In this case the Board contends that Teacher, whether receiving notice on September 21 or October 9, 1992, was given a probation period of some 22 weeks, well in excess of the 18 weeks which generally makes up a calendar semester.

 In an action such as this, we review the findings and conclusions of the board of education, an administrative agency, rather than the circuit court. *Johnson v. Francis Howell R–3 Board of Education,* 868 S.W.2d 191, 195 (Mo.App.1994). The issue of whether the board complied with the requirements of the statute is a question of law, and we

---

1. All references to statutes are to RSMo 1994 unless otherwise stated.

142

review under Rule 73.01 as interpreted in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). This court will affirm the decision of the board unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Id.* at 32.

The primary rule of statutory construction requires courts to ascertain the intent of the legislature by considering the plain and ordinary meaning of the words used in the statute. *Conagra Poultry Co. v. Director of Revenue*, 862 S.W.2d 915, 917 (Mo.banc 1993). We must construe the statute in light of the purposes the legislature intended to accomplish and the evils it intended to cure. *Wilson v. Director of Revenue*, 873 S.W.2d 328, 329 (Mo.App.1994). Courts should avoid interpretations which are unjust, absurd, or unreasonable. *St. Louis County v. Taggert*, 866 S.W.2d 181, 183 (Mo.App.1993).

Neither Missouri statutes nor case law have defined the term "semester". Webster's Ninth New Collegiate Dictionary (1991) defines semester as "either of the two usu. 18-week periods of instruction into which an academic year is often divided." *Id.* at 1068. Teacher argues that this definition supports her interpretation of the statute. We disagree. Nothing in the statute indicates that the legislature intended to require the warning period be rigid and only run concurrently with the calendar dates set by a school for each semester. Interpreting "semester" as a period of instruction commonly 18 weeks in length does not require such a conclusion.

A more reasonable interpretation of the legislature's intent is that the warning period is a period of time equivalent to one calendar semester. This interpretation has several advantages. It insures that teachers put on probation are given equivalent periods in which to improve. Under Teacher's interpretation, a teacher put on probation shortly after the fall semester began would have almost the entire year before charges could be presented, while teachers put on probation the first day of the first semester would have only that semester before action against

the teacher could take place. Teacher's interpretation would put students in a position of being instructed by a potentially incompetent teacher for almost an entire school year. While § 168.221 is intended to provide protection for permanent teachers and insure they are treated fairly, that goal should be balanced with our public policy to protect students from incompetent teachers and to set up procedures for their timely removal. The Board's interpretation serves both ends.

Teacher maintains that a probationary period that is not concurrent with the academic semester would create a disjointed and incomplete picture of her performance since lesson plans fit into a semester, not a period of weeks. This argument is not convincing. The probation period given Teacher in this case was at least 22 weeks, while a semester is normally considered only 18 weeks in length. There is no evidence Teacher's performance was not accurately evaluated in such a lengthy time span. As noted in the Board's brief, a classroom lacking any semblance of organization or discipline looks the same no matter what academic period it happens to be evaluated in. The circuit court likewise found that the Superintendent's interpretation of the semester's notice was reasonable. We find that notice of at least 18 weeks, the length of a semester, meets the intent of § 168.221.3. Point denied.

In the second point on appeal, Teacher argues that the Board erred in finding her inefficient in the line of duty since Superintendent failed to "meet and confer" with her during the warning period. The issue of whether the Board complied with the requirements of the statute is a question of law, and we again review under Rule 73.01 as interpreted in *Murphy v. Carron*.

Section 168.116 provides the general mechanism for removing permanent teachers charged with incompetency, inefficiency or insubordination in the line of duty. That section requires a written warning to the teacher at least 30 days prior to the actual filing of charges. During that warning period the Superintendent, or his designated representative, is required to meet and confer with the teacher in an effort to resolve the

matter. Teacher contends that Superintendent failed to meet and confer with her during her warning period.

There are significant differences in the way in which the legislature has chosen to treat metropolitan and non-metropolitan district teachers. The City of St. Louis School District is a metropolitan school district as defined by § 162.571. As such, removal of metropolitan permanent teachers is governed by a specific statute, § 168.221, not the general removal statute of 168.116 which differs in a number of ways. First, a teacher need only be employed by a metropolitan district three years in order to be a permanent teacher. Second, the warning period for teachers in a metropolitan school district is one semester, as opposed to 30 days. Third, there is no "meet and confer" requirement present in § 168.221. Despite these differences, Teacher contends that metropolitan districts are still governed by § 168.116 in situations in which § 168.221 does not contradict § 168.116. As such, she argues that Superintendent, or his representative, was still required to "meet and confer" with her during her warning period, since nothing in § 168.221 contradicts this requirement.

Teacher points to no case law in which any requirements of § 168.116 have been applied to metropolitan school districts. Had the legislature intended a "meet and confer" requirement for metropolitan school districts it could have done so explicitly in § 168.221, the statute governing metropolitan districts. Furthermore, in this case it is clear that even if metropolitan districts were required to "meet and confer", Superintendent more than complied with that requirement. After the warning letter was delivered to Teacher, a committee was formed to assist her in improving her teaching. Members from that committee observed Teacher in the classroom several times and met with her to discuss ways in which she could improve. Point denied.

In the third point on appeal, Teacher contends that the circuit court erred in denying her Motion to Compel the Board to respond to her "First Request for Admissions and Tandem Interrogatories." The request was made after the Board had reached its decision and during the pendency of her appeal to the Circuit Court.

Judicial review of a school board's decision to terminate a teacher is governed by Chapter 536. *Brown v. Weir,* 675 S.W.2d 135, 141–42 (Mo.App.1984). As such, review by the circuit court is generally limited to the record as compiled before the administrative tribunal. *Shadow Lake of Noel v. Supervisor of Liquor Control,* 893 S.W.2d 835, 838 (Mo.App.1995). In cases not involving administrative agency discretion, the circuit court may consider additional evidence, not presented to the agency, only if such evidence, in the exercise of reasonable diligence, could not have been presented to the agency or if the agency improperly excluded the evidence. § 536.140.4. In cases involving agency discretion, the circuit court may remand the case back to the agency if additional evidence is presented which could not have been produced earlier or had been improperly excluded. In the present case, regardless of whether the board's decision was one involving discretion, Teacher failed to present any legal authority or plausible argument as to why the information sought in the interrogatories could not have been obtained earlier and presented to the Board during its proceedings. As such, the circuit court correctly denied the motion to compel. Point denied.

Judgment is affirmed.

GERALD M. SMITH, P.J., and GARY M. GAERTNER, J., concur.